STATE OF VERMONT

ENVIRONMENTAL COURT

Town of Charlotte,
Plaintiff

v.                                    }
                                      }
                                      }    Docket Nos. 77-4-00 Vtec and
Carol Aube-Hinsdale,                  }           182-8-02 Vtec
Defendant.                            }
                                      }

&
Appeal of Carol Aube-Hinsdale

`

### Decision and Order

In Docket No. 77-4-00 Vtec, the Town brought an enforcement action for the conversion of Defendant= s house to three dwelling units without zoning approval. The enforcement action was put on hold for a considerable period of time while Mr. Clark Hinsdale III sought to obtain a parcel of land then subject to the jurisdiction of the probate court to achieve compliance with a 1990 permit for a Planned Residential Development that would have incorporated the house in question as a three-unit dwelling. He was unsuccessful in that effort and an evidentiary hearing was held in Docket No. 77-4-00 Vtec before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. The enforcement action requests injunctive relief to remove the kitchen and bathroom facilities of one of the three units, and seeks a penalty of $100 per day from September 24, 1999.

After that evidentiary hearing had taken place, the ZBA heard Defendant= s appeal of a decision of the Zoning Administrator regarding the validity of the 1990 Planned Residential Development permit. In Docket No. 182-8-02 Vtec, Defendant appealed the ZBA= s decision in that matter to the Environmental Court, filed with the Court in mid-August 2002. However, the appeal had been accompanied by a check for the filing fee made out to the Town of Charlotte rather than to the Court. The Town= s attorney returned the check to Mr. Hinsdale, requested that he send a check to the Court for the filing fee, and forwarded the notice of appeal to the Court. Upon receipt of the notice of appeal the Court staff sent the standard initial appeal letter directly to Appellant Carol Aube-Hinsdale, together with an entry of appearance form, an information sheet to assist her in notifying the interested persons, and a request for the filing fee so that the matter could proceed. Nothing was received from Appellant. On October 8, 2002, the Clerk of the Court sent a letter of inquiry to Clark Hinsdale III, outlining the need for the interested parties to be notified, the statement of questions to be filed, and the filing fee to be forwarded so that the appeal could proceed. Nothing has been received from Appellant= s representative Mr. Hinsdale. Accordingly, in Docket No. 182-8-02 Vtec, Appellant shall file the filing fee, her statement of questions, and a copy of the notice to interested parties, so that they are received by the Court and Attorney Lafferty on or before December 27, 2002. If they are not filed, Docket No. 182-8-02 Vtec will be dismissed effective December 31, 2002.

In both of the above-captioned matters, Defendant Carol Aube-Hinsdale appeared and authorized her ex-husband Clark Hinsdale III to represent her; the Town of Charlotte is represented by Amanda S.E. Lafferty, Esq. Upon consideration of the evidence and the written

memoranda and proposed findings, the Court finds and concludes as follows in Docket No. 77-4-00 Vtec.

Defendant Carol Aube-Hinsdale owns and occupies an historic brick farmhouse on Route 7 in Charlotte, now on a four-acre lot. The house was her family home and was formerly part of a larger dairy farm. When she and Clark Hinsdale III were married they lived in the house. The house historically contained two dwelling units with a total of six bedrooms. In 1985 the property was the subject of preliminary approval by the Planning Commission of a three-lot subdivision that identified the existing house as containing two units at that time and that no additional units would be added in the subdivision proposal. There was no evidence that the subdivision that was the subject of that preliminary approval ever actually occurred.

Rather, in 1987 the Planning Commission approved a four-lot Planned Residential Development including Defendant= s 4-acre lot and two-dwelling-unit house.

In September of 1999, the Zoning Administrator sent a Notice of Zoning Violation to Defendant, advising her that the house had been remodeled as and was currently being used for three separate dwelling units, without a permit. The Notice directed her immediately to discontinue residential use of one of the units and to contact the Zoning and Planning Office for merger of the units back to a two-unit configuration. Defendant did not file a timely appeal of this Notice and it cannot now be challenged.

At some time before 1990, Mr. Hinsdale designated the third unit as a home occupation office for his business, with bathroom and kitchen facilities. At this point in time the house was configured as two dwelling units with five bedrooms, plus the home office. At some later time, this home office began to be used for residential purposes, and the present dispute arose.

In 1990, Mr. Hinsdale proposed to amend the PRD by adding land to be acquired from neighboring property, so that the PRD would constitute 7 lots on at least 35 acres of land, and to convert the house from a duplex with a home occupation office to a three-dwelling-unit house. This proposal required amendments to state permits, an amendment to the PRD from the Planning Commission (and thereafter obtaining the required additional land), and conditional use approval from the ZBA for the three dwelling units in the house. The ZBA granted conditional use approval to convert the duplex with home office to three dwelling units, subject to conditions of obtaining site plan review and all other state and local permits, and obtaining amendment of the PRD.

Mr. Hinsdale made efforts to obtain the additional property. In fact, this enforcement case was put on hold for almost two years while those efforts were ongoing. However, he was unable to obtain the additional 12.4-acre parcel to be conveyed to him from the adjoining property, which was a condition of all the other approvals. (It was that adjoining parcel that became subject to probate proceedings during the pendency of this case). Accordingly, although he had obtained conditional use approval to convert the house to three dwelling units, that conversion should not have occurred in fact until all the conditions of that approval had been met.

Therefore, any use of the property as three separate dwelling units after September 25, 1999 was a violation. Defendant addressed the problem of the violation while waiting to see if the additional property would be acquired by her ex-husband to amend the PRD, by treating some part of the building as a single unit and sharing it with roommates, who entered into A roommate agreements@ to rent A a private bedroom and shared use of the first floor area@ of the house.

The question of whether these is a door between the sections of the house marked as #1 and #2 is not dispositive of whether they are separate units, as many homes in Vermont, especially older ones, have doors to all rooms. Nor is the number of bedrooms or bathrooms dispositive, as

a single dwelling unit can have more than one bathroom and more than one bedroom. Rather, what is dispositive is whether the separate sections of a house are used or easily capable of being used as separate dwelling units. The Court looks at the particular evidence of such separate use in each particular case, such as separate outside entrances to each unit, locking doors separating the units[1], exclusive use of each unit allocated in a written agreement, and separate kitchen and housekeeping facilities for each unit.

Defendant would have been entitled to remove the kitchen from any one of the three units, and to combine that unit with another unit, to come into compliance with the approved zoning status of the house. She would not have had to remove any of the bathrooms or bedrooms. She would not have had to remove any interior doors, although she may have had to remove the locking mechanism from some interior doors. If she had converted two of the units o a combined unit, then her renting out of a bedroom and bathroom, under a so-called > roommate agreement,= together with the shared use of the remainder of the combined unit, would not have been a violation[2] of the two-dwelling-unit status of the house. Because she did not do so , the configuration of the house is a violation.

The Town has spent $4,955 in legal costs and fees in this enforcement action; however, some portion of those costs and fees have been expended on settlement negotiations with Mr. Hinsdale including the dismissal of and reactivation of this enforcement case pending his efforts to acquire the additional property. Further, the period between the filing of the complaint and the trial of this matter would have occurred sooner, without those negotiations. While the Town argues that Defendant received an economic benefit of $412.50 per month or over $12,000 from having the third unit available for rental, there was no evidence that she could not have charged approximately the same amount of rent under the roommate agreements without the third kitchen= s being available to one of the > roommates.=

Based on the foregoing, in Docket No. 77-4-00 Vtec it is hereby ORDERED and ADJUDGED that judgment be entered in favor of the Town for the following injunctive relief: Until such time as a third dwelling unit is approved for this property, whether by itself or together with the amendment of or addition to the Planned Residential Development of which this property is a part, Defendant shall remove the kitchen facilities from one of the three dwelling units in the house, and shall remove the locking mechanisms from any interior doors separating that unit from any one of the other units, and shall thereafter treat the combined units as a single unit, so that the living areas and kitchen facilities are shared by the residents of the combined unit. This order does not prevent Defendant or the various roommates from having locks on separate bedroom doors, within the combined unit, unless such a configuration creates some other violation of the Zoning Bylaws.

Also based on the foregoing, in Docket No. 77-4-00 Vtec it is hereby ORDERED and ADJUDGED that judgment be entered in favor of the Town for a penalty in the amount of $5 per day for the 943 days from September 25, 1999 to April 26, 2002, the date of hearing in this matter, for a total penalty of $4,715.

Dated at Barre, Vermont, this 5th day of December, 2002.

_____

Merideth Wright
Environmental Judge

## Footnotes

[1]. As distinct from the ability to lock an individual bedroom door, which may be characteristic of a roommate arrangement.

[2.] We do not here address whether it would have been a violation of any other section of the Town's regulations, for example those regulating rooming houses, if any.